Rodney NICHOLSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 55A01–1005–CR–251.

Court of Appeals of Indiana.

April 29, 2011.

Transfer Granted July 20, 2011.

Scott Knierim, Baldwin Adams Knierim and Kamish, Danville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Arturo Rodriguez, II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary[1]

Rodney Nicholson appeals his conviction for Class C felony stalking. We reverse and remand.

### Issue

Nicholson raises two issues. We address one dispositive issue, which we restate as whether there is sufficient evidence to support his stalking conviction.

### Facts

In 2006, the Wolfe household repeatedly received phone calls between midnight and 2:00 a.m. If Patricia Wolfe or one of her daughters answered the phone, the male caller would describe how he was going to put his penis on their bodies, masturbate, and then ejaculate on them. During the calls, the caller would breathe heavily as if he was masturbating. When John Wolfe, Patricia's husband, answered the late night phone calls, the caller would hang up.

One night in 2006, one of the Wolfes' daughters heard someone outside their house in Mooresville. The daughter's boyfriend investigated and discovered someone hiding behind a tree. The man ran away. Approximately a week later, the Wolfes received another call, and the caller hung up. When they "pushed redial," John could hear the phone ringing outside. Tr. p. 291. Police eventually traced the calls to Nicholson, who lived near the Wolfes. Nicholson later pled guilty to voyeurism charges and was incarcerated.

Nicholson had no contact with the Wolfes from 2006 until November 1, 2008. That morning, at 1:41 a.m., the Wolfes received a phone call but were unable to answer it. Not recognizing the number on the caller ID and worried it was one of their daughters, Patricia returned the call. A man answered, breathing heavily, acting like he was masturbating, and saying he was going to put his penis on her body and masturbate. When John interrupted, the caller hung up. John called the number again, but the call went to a voicemail box identifying Nicholson and his business.

The Wolfes reported the incident to the police, who confirmed Nicholson had made the call. Nicholson's phone records indicated he made 380 phone calls from 11:52 p.m. on October 31, 2008, until 6:39 a.m. on November 1, 2008. The phone numbers were in a pattern, and most of the calls were less than a minute in duration. Focusing on calls that were longer than two minutes, police identified two other women who had had the same sort of graphic language used by Nicholson in phone calls.

The State charged Nicholson with Class C felony stalking and Class B misdemeanor harassment for the call to Patricia and with two counts of Class B misdemeanor harassment for the calls to the two other women. The stalking charge alleged, "on or about November 1, 2008 in Morgan County, State of Indiana, Rodney M. Nicholson Jr. did stalk Patricia Wolfe by

1. We heard oral argument on March 31, 2011, in South Bend. We thank Indiana University South Bend for its hospitality and thank counsel for their advocacy.

making an explicit or implicit threat, with the intent to place Patricia Wolfe in reasonable fear of sexual battery." App. p. 3. The State also alleged that Nicholson was an habitual offender.

A jury found Nicholson guilty of the stalking and harassment charges, and Nicholson admitted to being an habitual offender. Nicholson now appeals his stalking conviction.

## Analysis

■■■■ Nicholson argues there is insufficient evidence to support the stalking conviction. The standard of review for claims of insufficient evidence is well settled. We do not reweigh the evidence or judge the credibility of the witnesses, and we respect the jury's exclusive province to weigh conflicting evidence. *Jackson v. State*, 925 N.E.2d 369, 375 (Ind.2010). We consider only the probative evidence and reasonable inferences supporting the verdict and affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

As charged, the State was required to prove that Nicholson stalked another person and made an implicit threat with the intent to place the victim in reasonable fear of sexual battery. *See* Ind.Code § 35–45–10–5(b)(1)(B)(i). " '[S]talk' means a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." I.C. § 35–45–10–1. "Harassment" is defined as, "conduct di-

rected toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." I.C. § 35–45–10–2.

Nicholson argues that the single call on November 1, 2008 does not meet the statutory requirements of stalking, which requires "repeated or continuing" harassment. The State argues, "the circumstances of the 2006 events between Defendant and Patricia are relevant to the present offense because they prove the element of Defendant's repeated and continued course of conduct." Appellee's Br. p. 10. The State also points out that Nicholson might have been incarcerated in 2007, to explain why there were no calls to Patricia during that time.

The charging information references only the November 1, 2008 conduct, and it is clear that Nicholson made only one phone call to Patricia that night. Simply put, a single phone call is not "repeated or continuing harassment" as required by the stalking statute. This evidence alone is insufficient to support the stalking conviction.

For argument's sake, we assume the 2006 conduct was properly admitted into evidence and available for consideration as substantive evidence of stalking.[2] *See Landis v. State*, 704 N.E.2d 113, 113 (Ind. 1998) ("We conclude that the State may present evidence of prior *acts* that are probative of the crime of stalking (to the extent consistent with the Indiana Rules of Evidence and any other applicable law) but that evidence of any former *convictions*

**2.** Nicholson also argues that the trial court improperly admitted evidence of his 2006 conduct in violation of Indiana Evidence Rule 404(b). We need not decide this issue be-

cause of our conclusion that, even if it was properly admitted, the evidence is insufficient to support the conviction.

should be admitted only in the 'sentencing hearing'...."); *Johnson v. State,* 721 N.E.2d 327, 333 (Ind.Ct.App.1999) (holding that evidence of other stalking allegations of which Johnson was acquitted could not be considered "to establish the repeated or continuing nature of Johnson's actions, but it does bear on other elements of the second stalking charge, such as Johnson's intent and the victim's fear and emotional distress."), *trans. denied.* Even when considering the 2006 conduct, we are not convinced that it and the single phone call on November 1, 2008 is "repeated or continuing harassment."

There is little guidance as to what constitutes "repeated or continuing" for purposes of either the stalking or harassment statutes and the parties direct us to no such authority in their briefs. During oral argument, however, the State referenced *Johnson.* In that case, Johnson, on three different occasions during the same night, banged on the victim's window and door, requested to be let in, and berated the victim. *Johnson,* 721 N.E.2d at 333. We addressed Johnson's argument that, where the harassment occurs over a period of only several hours, the behavior cannot constitute "repeated or continuing" contact as a matter of law. *Id.* at 331.

In interpreting the stalking statute, we considered the dictionary definition of "repeat" and an Alabama appellate court's definition of "repeatedly" to conclude, "that the term 'repeated' in Indiana's anti-stalking law means 'more than once.'" *Id.* at 332–33. In assessing the sufficiency of the evidence to support Johnson's conviction, we explained:

> Because this behavior occurred more than once, it was repeated. It makes no difference that the behavior occurred over a short period of time. If the legislature had wanted to place parameters on the period of time over which

such behavior could occur, it could have done so. *See* Ark.Code Ann. § 5–71–229 (Michie 1997) (course of conduct defined as "a pattern of conduct composed of two (2) or more acts separated by at least thirty-six (36) hours, but occurring within one (1) year").

*Id.* at 333. We concluded that the three instances constituted "a course of conduct involving repeated harassment of the victim." *Id.*

To the extent *Johnson* holds that there are no parameters on the period of time during which the conduct must occur to be "repeated or continuing," we disagree. Although it is true that our Legislature could have put definitive time limitations in the statute and did not, we believe that the timeframe in which the conduct occurred is inherent in the inquiry whether harassment was "repeated or continuing."

It is not entirely clear when exactly the 2006 conduct stopped or whether it stopped because Nicholson's incarceration took him out of circulation; however, it is undisputed that he had no contact with Patricia from January 2007 until November 2008. Because Nicholson had no contact with Patricia for at least the twenty-two months before he made the single phone call to the Wolfe household on November 1, 2008, we cannot fit his conduct into any reasonable definition of "repeated or continuing harassment" as a matter of law. Of the 380 calls Nicholson made that night, only one, which the Wolfes returned, was to the Wolfes. Although this conduct was vile, as defense counsel observed during closing arguments, "Mr. Nicholson wasn't stalking anybody. He was, frankly, harassing everybody else." Tr. p. 388. In our opinion, Nicholson's conduct in this instance does not fall into the stalking ambit. The evidence is insufficient to support the stalking conviction.

## Conclusion

The single phone call on November 1, 2008, is insufficient to support Nicholson's stalking conviction. Even when we consider Nicholson's 2006 conduct, we are not convinced there is sufficient evidence to support the stalking conviction. Although we reverse the stalking conviction, Nicholson does not challenge the Class B misdemeanor harassment conviction. Therefore, we remand with instructions for the trial court to vacate the judgment of conviction for stalking and enter a judgment of conviction for harassment. We reverse and remand.

Reversed and remanded.

CRONE, J., concurs.

BRADFORD, J., dissents with opinion.

BRADFORD, Judge, dissenting.

I do not share the majority's conclusion that the State failed to produce sufficient evidence to sustain Nicholson's stalking conviction and respectfully dissent. I am in agreement with the panel of this court which stated that "[i]f the legislature had wanted to place parameters on the period of time over which such behavior could occur, it could have done so." *Johnson v. State*, 721 N.E.2d 327, 333 (Ind.Ct.App. 1999), *trans. denied.* Nicholson repeated essentially the same type of conduct aimed at the same victim. The gap of time between the repeated conduct, occasioned primarily by Nicholson's incarceration for the first offense against the victim, is a non-factor under the wording of the Indiana stalking statute.[3]

---

**3.** I would also deny Nicholson's challenge to admission of evidence of the 2006 incidents on Rule 404(B) grounds. Far from being evidence of "other" acts, it is evidence of the very acts that establish that Nicholson repeatedly harassed the Wolfes.