**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 12 2012, 8:50 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TYMON BROWN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1203-CR-233 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1101-MR-5972

**December 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHARPNACK, Senior Judge**

Tymon Brown appeals his conviction of felony murder. Ind. Code § 35-42-1-1(2) (2007). We affirm.

## ISSUES

Brown presents two issues for our review, which we restate as:

I.      Whether the State's evidence was sufficient to sustain Brown's conviction of felony murder.

II.     Whether the trial court abused its discretion by admitting into evidence two letters allegedly written by Brown.

## FACTS AND PROCEDURAL HISTORY

In January 2011, Brown's girlfriend, Trachelle Robinson, and Brown's friend, Jeramie Seabury, made plans to commit a robbery. On the night of January 26, 2011, Brown and Robinson picked up Robinson's cousin, Tia Washum. The three then picked up Seabury. Prior to that night, planning of the robbery had taken place only between Robinson and Seabury; however, once the group was in the car together, the robbery plan was discussed among them all. There is conflicting testimony regarding whether the plan was to rob the liquor store or the liquor store clerk, Willie Dodd, who was a friend of both Robinson and Washum. Nevertheless, the plan involved Robinson and Washum luring Dodd outside the store so that Brown and Seabury could approach and commit the robbery.

On that night, Robinson and Washum dropped off Brown and Seabury down the street from the liquor store and then proceeded to the liquor store. Once they arrived at the store, Robinson and Washum went in the store, told Dodd they were having car

2

trouble, and asked him for help. Dodd exited the store to help them, and, as he began adding antifreeze to the car, Brown and Seabury, wearing all dark clothing and with their faces covered, ran up and hit Dodd on the head. After being hit and wrestling himself free from the hold of Brown and Seabury, Dodd produced a gun and began shooting. Seabury fired back with a gun that belonged to Brown and that Seabury had previously borrowed or taken from Brown. Brown and Seabury then fled. During the gunfire, Robinson, who was seated in the car the group had driven to the liquor store, was shot in the back of the head. She later died from her injuries.

Based upon this incident, Brown was charged with felony murder and attempted robbery. A jury found Brown guilty of both charges. At sentencing, the trial court merged the attempted robbery charge into the felony murder charge and sentenced Brown to forty-five years. Brown now appeals his conviction of felony murder.

DISCUSSION AND DECISION

I. SUFFICIENCY OF THE EVIDENCE

Brown first contends that there is a lack of evidence with which to convict him of felony murder. He argues that he did not know that Seabury had a gun the night of the attempted robbery and that due to his lack of knowledge of this fact, the shooting death of Robinson was not reasonably foreseeable to him.

In essence, Brown's argument is a challenge to the sufficiency of the evidence. When reviewing claims of insufficient evidence, we neither weigh the evidence nor judge the credibility of the witnesses. *Caruthers v. State*, 926 N.E.2d 1016, 1022 (Ind. 2010).

3

If there is substantial evidence of probative value from which a reasonable trier of fact could find guilt beyond a reasonable doubt, we will affirm the conviction. *Id.*

Brown was charged with felony murder pursuant to Indiana Code section 35-42-1-1(2), which provides, in pertinent part: "A person who . . . kills another human being while committing or attempting to commit . . . robbery . . . commits murder, a felony." In addressing the application of the felony murder statute, our Supreme Court has held that the statutory language "kills another human being while committing" does not restrict the felony murder provision only to instances in which the defendant is the killer, but may also apply equally when, in committing any of the designated felonies, the defendant, although not the killer, contributes to the death of any person. *Palmer v. State*, 704 N.E.2d 124, 126 (Ind. 1999) (affirming defendant's felony murder conviction for death of accomplice who was shot and killed by kidnapping victim). Our Supreme Court has further stated that where the defendant reasonably should have foreseen that his felonious conduct would likely create a situation which would expose another to the danger of death, the creation of such a dangerous situation is a medium in bringing about the death of the victim and the accused may be held accountable. *Id.* Moreover, in establishing guilt under the felony murder statute, the State need not prove intent to kill but only the intent to commit the underlying felony. *Vance v. State*, 620 N.E.2d 687, 690 (Ind. 1993).

The evidence presented at trial demonstrates that Brown agreed to participate in a robbery of either Dodd or the liquor store. He dressed in dark clothes and wore a mask over his face. Once Dodd was lured out of the store, Brown ambushed him and hit him in the head in an attempt to subdue him so that Brown and Seabury could rob him or the

4

store.  When Dodd freed himself from Brown's grasp, he began shooting.  Seabury returned fire, and, in doing so, shot and killed Robinson.  Brown fled from the scene.

At the time of the robbery, Brown knew that Seabury had borrowed or taken possession of his gun several weeks to several months prior to the robbery.  In addition, Seabury told police the night of the robbery that Brown, Robinson, and Washum came to his girlfriend's house to pick him up in order to "get the gun."  Tr. p. 272.  This evidence leads to an inference that Brown knew that Seabury was armed the night of the robbery.

Even if Brown was unaware of Seabury's possession of the gun on that night, Brown's conduct created a dangerous situation in which it was a foreseeable possibility that the victim might resist or that law enforcement would respond, thereby creating a risk of death to persons present.  Our state constitution gives the people a right to bear arms "for the defense of themselves."  Ind. Const. art. I, § 32.  Indeed, "[a] victim of a forcible felony . . . fighting back with deadly force is such a natural consequence that it has been justified by our State's legislature."  *Exum v. State*, 812 N.E.2d 204, 208 (Ind. Ct. App. 2004) (citing Ind. Code § 35-41-3-2), *trans. denied*.  Therefore, we conclude that regardless of whether Brown knew that Seabury was armed, it was reasonably foreseeable that Brown's commission of the crime of attempted robbery was likely to create a situation where the victim of the robbery might defend himself, thus creating a situation where a death might occur.  *See id.* (affirming conviction of felony murder for death of co-perpetrator where defendant - who was unarmed, did not physically assault victims, and fled prior to shooting - reasonably should have foreseen that commission of

5

attempted robbery would create situation which would expose another to danger of death).

Additionally, as an accomplice in the attempted robbery, Brown is criminally liable for the acts of his co-perpetrators, which included using a deadly weapon in an attempt to commit robbery. *See* Ind. Code § 35-41-2-4 (1977); *Forney v. State*, 742 N.E.2d 934, 938 (Ind. 2001) (an accomplice is criminally responsible for all acts committed by his confederates which are probable and natural consequence of their common plan). For these reasons, we find there is sufficient evidence to support Brown's conviction of felony murder.

## II. ADMISSION OF EVIDENCE

Brown argues that the trial court erred by admitting into evidence at trial two letters purportedly written by him. In support of his contention, he cites Indiana Evidence Rule 901, the basis of his objection at trial.

The trial court is afforded wide discretion in ruling on the admissibility and relevancy of evidence. *Nicholson v. State*, 963 N.E.2d 1096, 1099 (Ind. 2012). On appeal, evidentiary decisions are reviewed for abuse of discretion and are reversed only when the decision is clearly against the logic and effect of the facts and circumstances. *Id.* Only when the error affects the substantial rights of the moving party does a claim of error in the exclusion or admission of evidence prevail on appeal. *Id.*

Brian Rodgers, mail clerk at the Marion County Jail, testified at trial that Brown handed him a single envelope as an outgoing piece of mail. For security reasons, Rodgers conducts random searches of the mail, and he checked the envelope given to him

6

by Brown. The language of the letters contained in the envelope caused Rodgers to turn the letters in to the special investigation unit. At trial, Brown objected to the admission of the letters on the basis of authentication. The trial court admitted the letters into evidence over Brown's objection.

Indiana Evidence Rule 901 provides, in pertinent part:

**(a)** **General Provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

**(b)** **Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

******

(4) *Distinctive characteristics and the like.* Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

Brown asserts that the letters should not have been admitted into evidence because they were not properly authenticated. Particularly, he notes that Rodgers could not positively identify the handwriting on the letters as Brown's.

An item is authenticated when the evidence is "sufficient to support a finding that the matter in question is what its proponent claims." Ind. Evidence Rule 901(a). Contents, substance, or other distinctive characteristics, taken in conjunction with the circumstances, may satisfy the requirement of authentication. Evid. R. 901(b)(4). When evidence establishes a reasonable probability that an item is what it is claimed to be, the item is admissible. *Lockhart v. State*, 671 N.E.2d 893, 901 (Ind. Ct. App. 1996).

7

The record shows the envelope in which the letters were contained and handed to Rodgers bears a return address for "Tymon Brown, MW, 40 S. Alabama St." Ex. Vol. p. 246. Further, Rodgers testified that Brown was the person who handed him the envelope containing the two letters. The first letter, written to "Damon," refers to "Juju" taking a plea to testify against the author. *Id.* At trial, both Washum and Seabury testified that "Juju" is Seabury's nickname. Tr. pp. 146, 231. The letter's author also asks the recipient for certain testimony regarding "my gun" and about getting "the gun back from Juju." Ex. Vol. p. 246. At trial, Seabury testified that he had taken possession of Brown's gun prior to the robbery and that it was Brown's gun that he used that night. Tr. pp. 239-40. Finally, the first letter was signed "T-man," which Washum had testified is Brown's nickname. Ex. Vol. p. 246; Tr. p. 145.

The second letter was written to "Josh." Ex. Vol. p. 247. In the letter, the author tells the recipient how to testify regarding the author's gun and discusses the recipient picking up the author and "Juju" and directs the recipient to testify that only Juju seemed nervous. *Id.* Seabury testified at trial that following the attempted robbery, he and Brown fled to a nearby McDonald's. Brown then used his cell phone to call for a ride, and Seabury testified that "Josh" came and picked them up from the McDonald's. Tr. p. 248. The author of the letter continues by telling the recipient that his testimony won't "hurt" Juju because "he already took a plea for about 40 or something to lie against me." Ex. Vol. p. 247. Additionally, the letter stated that "Juju want[s] me to go down with him – he did the shooting and everything – that[']s why I need you to explain how Juju [is] a snake." *Id.*

8

The testimony at trial was consistent with the contents of the letters and showed that the person who authored the letters knew Juju; had knowledge of a shooting allegedly carried out by Juju; was attempting to regain possession of a gun from Juju; was being testified against by Juju; and was picked up, with Juju, by Josh. We conclude there was sufficient evidence to support a finding that Brown authored the letters. Thus, the State laid an adequate foundation to meet the requirements for authentication, and the trial court did not abuse its discretion by admitting the letters into evidence.

<u>CONCLUSION</u>

For the reasons stated, we conclude that the evidence is sufficient to support Brown's conviction of felony murder. In addition, the trial court properly exercised its discretion by admitting the letters into evidence.

Affirmed.

BAKER, J., and CRONE, J., concur.

9