

# IN THE
# Court of Appeals of Indiana

Phillip D. Hinkle,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Aug 15 2024, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

August 15, 2024

Court of Appeals Case No.
24A-CR-136

Appeal from the Marion Superior Court

The Honorable Clark Rogers, Judge
The Honorable David Hooper, Magistrate

Trial Court Cause No.
49D25-2311-CM-31848

**Opinion by Judge Riley**
Judges Kenworthy and Felix concur.

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Phillip D. Hinkle (Hinkle), appeals his conviction for invasion of privacy, a Class A misdemeanor, Ind. Code § 35-46-1-15.1(a)(1).

We affirm.

## ISSUES

Hinkle presents this court with two issues on appeal, which we restate as:

> (1) Whether the trial court abused its discretion when it admitted the chronological case summary (CCS) of Hinkle's protective order proceeding into evidence; and

> (2) Whether the State presented sufficient evidence to establish that Hinkle committed invasion of privacy by violating the protective order.

## FACTS AND PROCEDURAL HISTORY

On November 8, 2023, B.H. obtained an *ex parte* protective order against Hinkle in cause number PO-43456 (Protective Order Case), prohibiting Hinkle from entering B.H.'s residence and place of employment. According to the CCS in the Protective Order Case, service upon Hinkle was perfected on November 9, 2023 at 9:27 p.m. Specifically, the entry reads:

> Service Returned Served: Order of Protection Served:
> Respondent Hinkle, Phillip POR Service Perfected: Service Date:
> 11/9/2023 9:27 PM

Person Served.  Phillip Hinkle, Served By:  [G]arrett [T]rout,  []
Street:  241 [F]inley;
City:  Indianapolis;
County:  Marion;
Agency:  IMPD Department of Public Safety;
Manner:  Personal.

(State's Exh., p. 7).

[5]    Two days later, on November 11, 2023, two officers of the Indianapolis Metropolitan Police Department were dispatched to B.H.'s address in response to a report of a person outside B.H.'s garage.  The two-car garage is detached from and adjacent to the main residence and stands in the backyard behind the house.  Upon arrival, the officers located Hinkle inside the garage.  After Hinkle refused to exit the garage, the officers decided to enter.  When entering the garage, the officers noticed that Hinkle was holding a black object in his hand.  Although he was ordered to drop the object, Hinkle refused and the officers, after using force, handcuffed and detained Hinkle.

[6]    On November 12, 2023, the State filed an Information, charging Hinkle with invasion of privacy and resisting law enforcement, both Class A misdemeanors.  On December 19, 2023, the trial court conducted a bench trial.  At the close of the evidence, the trial court found Hinkle guilty of invasion of privacy and not guilty of resisting law enforcement.  The trial court sentenced Hinkle to time served, which was seventy-four days.

[7]    Hinkle now appeals.  Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Admission of Evidence*

[8] Hinkle contends that the trial court abused its discretion by admitting the certified CCS of the Protective Order Case as evidence that Hinkle had notice of the protective order. The general admission of evidence at trial is a matter we leave to the discretion of the trial court. *Nicholson v. State*, 963 N.E.2d 1096, 1099 (Ind. 2012). We review these determinations for an abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.*

[9] To establish that Hinkle was aware of the existence of the protective order, the State introduced the certified CCS of the Protective Order Case into evidence, which included a notation indicating that Hinkle had been served with the protective order. Hinkle objected to the admission based on hearsay grounds, maintaining that the entry, reflecting the service of the protective order, amounted to the clerk creating a notation on the CCS which summarized the statements of the process server. He argues that a better practice would have been for the process server to testify at the hearing. The State contends that the certified CCS is admissible under the public records exception of the hearsay rules.

[10] "Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." Ind.

Evidence Rule 801(c). "Hearsay is not admissible unless it falls within one of the exceptions provided in the evidence rules." Evid. R. 802. We will affirm the trial court's hearsay ruling on any legal basis apparent in the record. *Robinson v. State*, 730 N.E.2d 185, 194 (Ind. Ct. App. 2000).

[11] The CCS contains hearsay because it includes an out-of-court statement that Hinkle was served with the protective order, the identifying information of the person who served it, the place of service, and this specific notation was offered for the purpose of establishing that Hinkle had, in fact, been served with the protective order. A pertinent exception to the hearsay rule—and applicable here—concerns "public records and reports," contained within Indiana Evidence Rule 803(8):

> [u]nless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations in any form, of a public office or agency, setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law.

*See Fowler v. State*, 929 N.E.2d 875, 878 (Ind. Ct. App. 2010). The following types of records are explicitly excluded from the rule:

> (a) investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case; (b) investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party; (c) factual findings offered by the government in a criminal

case; and (d) factual findings resulting from a special investigation of a particular complaint, case, or incident, except when offered by an accused in a criminal case.

Ind. Evidence Rule 803(8); *see id.*

[12] The public records exception to the hearsay rule is grounded in the "assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." *Fowler*, 929 N.E.2d at 878 (quoting 13 Robert Lowell Miller, Jr., Indiana Practice: Indiana Evidence § 803.108 (3d ed.2007)). A document does not need to be open and available to the public in order to qualify for admission under the public records exception. *Id.* (citing 2 Kenneth S. Broun, McCormick On Evidence § 295 (6th ed. 2006)). Fundamentally, the rule requires that a public agency or office created the document. *Id.* (citing Evid. R. 803(8)).

[13] The Indiana Protective Order Registry is an Internet based electronic depository for protective orders that was established by the legislature and that is managed and maintained by the division of state court administration. *See* I.C. §§ 5-2-9-1.4; -5.5. When a court enters a protective order, including one, like here, entered under Chapter 34-26-5, the clerk of the court is required to enter the protective order into the Protective Order Registry. *See* I.C. §§ 34-26-5-3(f), (g); 34-26-5-9(d)(6); *see also* I.C. § 5-2-9-5.5(b) ("Copies of all protective orders shall be retained in the registry."). The court is also required to provide the order to the county sheriff for service. *See* I.C. § 35-26-5-9(d)(1). Similarly, when a law enforcement agency perfects service of the protective order, it is required to

enter the service information into the Registry. *See* I.C. § 5-2-9-6.5(b). The division of state court administration was required by law to create and implement a protocol to allow county court case management systems to interface with the Protective Order Registry to facilitate the duty of courts to register all protective orders issued. *See* I.C. §§ 5-2-9-5.5(f), (g); 34-26-6-3(a)(7). Thus, the service history information is routinely provided and maintained by public officials who have a statutory duty to record and maintain this information for the purpose of allowing court officers and law enforcement officials to rely on the information so that they can give effect to valid orders of protection. Far from indicating a lack of trustworthiness, the circumstances of the creation of the record affirm the presumption that public officials perform their duties properly. The State's proffered CCS, which interfaced with the Protective Order Registry as evidenced by the annotation 'POR,' indicated the service history for the protective order and it lists the person served, the date and time of service, the method of service, the location of service, and the name and law enforcement agency of the officer who perfected service. *See* I.C. § 5-2-9-6.5(b).

[14] Accordingly, because the service history entry on the Protective Order Registry sets out a matter observed while under a legal duty to observe and report, its source does not indicate a lack of trustworthiness, and the Protective Order Registry is statutorily required to interface with the county court case management systems, the certified CCS of the Protective Order case falls within the public records exception set forth under the hearsay rule. *See* Evid. R.

803(8)(A)(i)(b); Evid. R. 803(8)(A)(ii).  We conclude that the trial court did not abuse its discretion overruling Hinkle's hearsay objection.

II. *Sufficiency of the Evidence*

Next, Hinkle contends that the State failed to present sufficient evidence beyond a reasonable doubt to establish that he committed invasion of privacy. Our standard of review of a challenge to the sufficiency of the evidence supporting a criminal conviction is well-established:  we do not reweigh the evidence or judge the credibility of the witnesses, and we affirm if there is "substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Lehman v. State*, 203 N.E.3d 1097, 1104 (Ind. Ct. App. 2023), *trans. denied*.

After a bench trial Hinkle was convicted of invasion of privacy under Indiana Code section 35-46-1-15.1(a)(1), which provides, in pertinent part, that

> A person who knowingly or intentionally violates:
>
> (1) a protective order to prevent domestic or family violence or harassment issued under [I.C. §] 34-26-5 (or, if the order involved a family or household member, under [I.C. §] 34-26-2 or [I.C. §] 34-4-5.1-5 before their repeal);
>
> (2)  an ex parte protective order issued under [I.C. §] 34-26-5 (or, if the order involved a family or household member, an emergency order issued under [I.C. §] 34-26-2 or [I.C. §] 34-4-5.1 before their repeal);

commits invasion of privacy, a Class A misdemeanor.

[17] On November 9, 2023 the court held a hearing in the Protective Order Case and issued an *ex parte* protective order under Indiana Code section 34-26-5. The protective order stated that Hinkle was "forbidden to enter or stay at [B.H.'s] residence." (State's Exh. p. 5). Not contesting the statutory elements of the instant offense, Hinkle challenges the interpretation of the underlying protective order and advocates to adopt a minimalist interpretation of 'residence' as to encompass solely the physical structure of the main house, thereby excluding the detached garage where he had been located by the officers.

[18] In support of his argument, Hinkle analogizes our case law involving search warrants which requires the warrant to specifically include a detached garage. However, we find these cases distinguishable from the case at hand. Whereas in the case of search warrants, we mandate the existence of probable cause and a particular description of "the place to be searched" in order to protect "the right of the people to be secure in their persons, houses, papers, and effects," a different purpose is served by the issuance of a protective order. *See* IN. Const. Art. 1 § 11.

[19] Indiana's Civil Protection Order Act, enacted in 2002, has the express purpose of promoting the "(1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; (2) protection and safety of all victims of harassment in a fair, prompt, and effective manner; and (3) prevention of future domestic violence, family violence, and harassment." I.C.

§ 34-26-5-1. Aimed at combating the scourge of domestic and family violence, the Act protects both past and present victims and their children. *S.H. v. D.W.*, 139 N.E.3d 214, 219 (Ind. 2020). "Allowing protective order respondents to evade enforcement through technicalities is counter to the purpose of the Civil Protection Order Act and simply dangerous for those whom the act is designed to protect." *Joslyn v. State*, 942 N.E.2d 809, 810 (Ind. 2011). Embracing Hinkle's limited interpretation of 'residence' as only the physical dwelling without regard to the remainder of the premises would run counter to promoting the Act's purpose of protection and safety. Therefore, we interpret 'residence,' as employed in the protective order, to include the entire property address, including the home and any detached buildings on the premises. Because the detached garage is part of the same residence, same address, and same property, we conclude that Hinkle violated the protective order when he entered the garage. As such, we leave the trial court's conclusion that Hinkle committed invasion of privacy undisturbed.

## CONCLUSION

[20] Based on the foregoing, we conclude that the trial court did not abuse its discretion by admitting the CCS of the Protective Order case into evidence and that the State presented sufficient evidence beyond a reasonable doubt to support Hinkle's conviction of invasion of privacy.

[21] Affirmed.

Kenworthy, J. and Felix, J. concur

ATTORNEY FOR APPELLANT

Steven J. Halbert
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana