

**FILED**

Aug 04 2015, 10:02 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stephen Ferguson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 4, 2015

Court of Appeals Case No.
49A04-1412-CR-557

Appeal from the Marion Superior
Court.
The Honorable Lisa Borges, Judge.
Cause No. 49G04-1404-FA-017352

**Sharpnack, Senior Judge**

## Statement of the Case

[1] Stephen Ferguson appeals from his conviction of two counts of Class A felony

child molesting,[1] contending that the trial court committed errors which

---

[1] Ind. Code § 35-42-4-3 (2007).

individually and cumulatively amounted to reversible error denying Ferguson a fair trial. We affirm.

## Issues

Ferguson presents the following issues for our review:

> I. Whether the trial court abused its discretion by failing to inform the jury that certain testimony had been struck from the record;
>
> II. Whether the trial court acted as a witness during trial in violation of Indiana Rule of Evidence 605; and
>
> III. Whether the errors cumulatively amount to fundamental error.

## Facts and Procedural History

A.W. was six years old at the time of the incidents leading to the charges against Ferguson. Although her parents were no longer in a relationship, A.W. lived with her mother, K.R., while her father, G.W., had liberal visitation with A.W. She would stay with her mother during the week and would spend weekends with her father. There was no animosity between the two parents.

In January 2014, K.R. began a relationship with Ferguson. Initially, Ferguson would spend nights with K.R. at her home and by March had moved in with her. Almost immediately after Ferguson moved in, he developed an "issue" with A.W. spending time with her father. Tr. p. 123. K.R. saw nothing wrong with A.W. spending time with G.W., but relented after many arguments with Ferguson involving threats that he would leave her. A.W. did not visit her

father for a couple of weekends per Ferguson's wishes, but eventually she was allowed to resume visitation with her father after Ferguson acquiesced.

[5] On several occasions, while at her mother's house, A.W. would awake at night to feel something "wet" on her private areas, which she described as the area she used to pee. Tr. pp. 14, 16. After opening her eyes, she would see Ferguson between her legs below her vagina licking her like he was "licking a sucker." *Id.* at 16, 19. When A.W. would try to close her legs, Ferguson would push them open with his hands. This occurred on more than one occasion.

[6] A.W. told her father what Ferguson had done, and G.W. immediately took A.W. to her grandmother's house. While A.W. was talking to her grandmother, A.W.'s aunt and mother arrived and heard A.W.'s account of what Ferguson had done. A.W. was taken to the hospital for an examination and was later interviewed by a forensic interviewer.

[7] The State charged Ferguson with two counts of Class A felony child molesting. At Ferguson's jury trial, A.W. was the first witness and testified what Ferguson had done to her and repeated that account during cross-examination. The next witness called by the State was G.W. who testified on direct examination about what happened after A.W. told him of Ferguson's actions. During cross-examination of G.W. the following occurred:

> Q: [by defense counsel, BJ] And then you came downtown or came somewhere to make a police report the next day?
>
> A: No, they had us go to the Child Protective Services, I think.

Q:      [by BJ]  Okay.  And did you take A.W. there?

A:      Yes.

Q:      [by BJ]  Her mom as well?

A:      Yeah, all of us was in the room.  A.W. – they took her in the other room by herself –

Q:      [by BJ]  Right.

A:      -- and let her talk.  And when she came out, the detectives told her that they believe her.

[by BJ]      Judge, we would strike that last statement.

[G.W.]      Why?

[The Court]  Okay.

[G.W.]      Tell the whole truth.

[The Court]  Okay.  Just – I'm sorry.  If the parties would approach?

Side Bar Colloquy Out Of Hearing Of Jury

[The Court]  What was the basis for striking that?

[BJ]          He – I don't know if you heard him.  He said the detectives told us they believe her.

[The Court]  Well—

[BJ]          I mean –

[The Court]  Right.  I'll show it to be stricken.  I'll admonish the jurors.

End Side Bar Colloquy

[The Court]  Ladies and gentlemen, you know, you're to – you're to base your decision on the testimony that you hear and see today.  And you're to make your decision as to the credibility of each witness, all right.  The opinions of other people, though heartfelt, are not something you can consider, all right.

> [BJ]         Thanks, Judge.
>
> [The Court]  Mm-hmm.

Tr. pp. 77-78. Defense counsel continued cross-examination and the trial proceeded.

[8] The jury found Ferguson guilty of both counts of Class A felony child molesting. The trial court sentenced Ferguson to concurrent terms of forty years to be served in the Department of Correction. Ferguson now appeals.

# Discussion and Decision

## I.  Failure to Inform Jury Testimony Was Struck

[9] Although the trial court did admonish the jury not to consider the opinions of other people about the credibility of a witness, Ferguson claims that the trial court made a reversible error by not specifically telling the jury it had stricken "the detectives told her that they believe her." *Id.* at 77.

[10] Ferguson argues that the trial court abused its discretion in not telling the jury the statement had been struck from the record. However, that argument is not available to Ferguson because he made no objection to the admonishment on any ground. Rather his counsel thanked the court for giving the admonishment.

[11] The failure to properly object at trial waives any error on appeal. *Banks v. State*, 567 N.E.2d 1126, 1129 (Ind. 1991). Having made no objection to the admonishment, the only line of argument open to Ferguson would be to argue that it was fundamental error to not advise the jury that the challenged

testimony had been struck and, in effect, allow the improper vouching testimony to stand. Cases have reviewed instances of vouching testimony as fundamental error. For example in *Kindred v. State*, 973 N.E.2d 1245, 1257-58 (Ind. Ct. App. 2012), *trans. denied*, the issue of vouching for the credibility of a victim of child molesting was examined for fundamental error, and we acknowledged the elimination of the vouching testimony exception in child molesting cases as announced in *Hoglund v. State*, 962 N.E.2d 1230 (Ind. 2012). Likewise, in *Bean v. State*, 15 N.E.3d 12, 22-23 (Ind. Ct. App. 2014), *trans. denied*, we concluded that the vouching testimony of two key witnesses, the victim's mother and the DCS investigator, in addition to instances of prosecutorial misconduct constituted fundamental error requiring a reversal of the defendant's convictions.

[12] However, Ferguson makes no argument that it was fundamental error in his opening brief or in his reply brief after the State in its appellee's brief made the points that there had been no objection in the trial court and no contention of fundamental error on appeal. The issue of the trial court's failure to advise the jury that it had struck the challenged testimony is waived.

## II. Evidence Rule 605

[13] Ferguson challenges the trial court's use in its admonishment to the jury of the words "though heartfelt" in referring to the opinions of others as to the credibility of witnesses. Tr. p. 78. Ferguson argues that in using those words the trial court violated Evidence Rule 605, which provides:

> The presiding judge may not testify as a witness at the trial. A party need not object to preserve the issue.

As we have indicated, Ferguson made no objection to the trial court's admonition. However, as the rule provides, no objection is required to raise an Evidence Rule 605 claim of error on appeal.

[14] Although Ferguson vigorously argues the issue of the claimed testimony of the trial court as a witness in violation of Evidence Rule 605, the State does not address the issue in its appellee's brief. Where an appellee's brief fails to address an issue raised by an appellant in the opening brief, it is the same, as to that issue, as though the appellee filed no brief. *Cox v. State*, 780 N.E.2d 1150, 1162 (Ind. Ct. App. 2002). Where an appellee files no brief, we review to determine if the appellant has made a prima facie showing of reversible error. *Id.* A prima facie showing is error at first sight, on first appearance, or on the face of it. *Id.*

[15] It is obvious here that the trial judge was not sworn in as a witness and did not "testify" in the usual sense of that word. The question is whether her use of the words "though heartfelt" was sufficiently testimonial in nature to violate Evidence Rule 605. There are no Indiana cases addressing the issue of what constitutes impermissible judicial testimony under Indiana Evidence Rule 605, leading us to turn to other sources to guide us in our resolution of this issue.

[16] The reason for the broad rule prohibiting a judge from testifying as a witness in a trial or a proceeding over which he or she is presiding is that taking the role of a witness is inconsistent with the judge's customary duty of impartiality. 98

C.J.S. § 185 (2015). Both the federal and state evidentiary rules provide a bright line test with respect to that conduct in terms of the judge stepping down from the bench, being sworn in, and actually taking the witness stand. As Judge Miller observes, however, the rule provides less of a bright line where a judge may become a witness in "less overt ways." Robert Lowell Miller, Jr., 13 Ind. Practice, Indiana Evidence § 605.101 (3d ed.). "Indiana Rule 605 should be interpreted the same way as the federal rule on this issue. Regional Advisory Committee unofficial commentary to Ind. Evid. Rule 605, Appendix B ('Rule 605 applies even if the judge testifies without being formally called as a witness.')". *Id.* n.7.

[17] Although several of the cases Miller cites involve challenges brought under Federal Rule of Evidence 605, resolution of the question whether the particular judge has become a witness in one of those "less overt ways" often involves analysis falling under judicial fair comment and not the evidentiary rule. Error is found where the judge's comments add to the evidence and are not merely summarizations of or fair comment on evidence already adduced at trial.

[18] The origin of the fair comment analysis appears to come from a case pre-dating the federal rule. *See Quercia v. United States*, 289 U.S. 466, 472, 53 S. Ct. 698, 77 L. Ed. 1321 (1933) (judicial commentary about how defendant's wiping of his hands while testifying was behavior classically indicative of lying found to be reversible error). A few cases involving challenges brought under the federal rule use that fair comment analysis. *See e.g., United States v. Paiva*, 892 F.2d 148, 159 (1st Cir. 1989) (trial judge's commentary explaining to jury difference

between field testing and lab analysis while ruling on objection was error but harmless); *United States v. Nickl*, 427 F.3d 1286, 1294-95 (10th Cir. 2005) (reversible error committed when judge commented on intent element of aiding and abetting charge by stating that he accepted witness's guilty plea in companion case because he was convinced of her intent); *United States v. Blanchard*, 542 F.3d 1133, 1151-53 (7th Cir. 2008) (reversible error where judge told jury statement he made about government witness's credibility in suppression hearing, which was read into record by prosecution, was his statement and judicial testimony).

[19] We find here that the trial court's use of "though heartfelt" was not testimony and was not improper comment on an issue to be decided by the jury. The trial court instructed the jury not to consider the opinions of others as to the credibility of witnesses. "Though heartfelt" emphasized the instruction by saying it was not relevant how "heartfelt" the opinions may have been.

## III. Cumulative Error

[20] Ferguson claims that the irregularities at trial cumulatively amount to reversible error. Here, having found no error we need not consider whether the alleged errors amounted to cumulative error.

[21] Affirmed.

Bailey, J., and Barnes, J., concur.