## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 01 2018, 8:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kevin Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John C. Green,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

August 1, 2018

Court of Appeals Case No.
18A-CR-29

Appeal from the Marion Superior Court

The Honorable Alicia A. Gooden, Judge

Trial Court Cause No.
49G21-1606-F2-25003

**Bailey, Judge.**

# Case Summary

[1] John Green ("Green") appeals his convictions, following a bench trial, for dealing in a narcotic drug, as a Level 2 felony;[1] possession of a narcotic drug, as a Level 3 felony;[2] driving while suspended, a Class A misdemeanor;[3] and possession of marijuana, as a Class B misdemeanor.[4]

[2] We affirm.

# Issues

[3] Green presents the following restated issues:

I. Whether the trial court erred in admitting the heroin into evidence.

II. Whether the trial judge was unfair and partial, thereby denying Green a fair trial.

# Facts and Procedural History

[4] On June 24, 2016, Indianapolis Metropolitan Police Department ("IMPD") Officers Greg Milburn ("Officer Milburn") and Jason Hitchcock ("Officer

---

[1] Ind. Code § 35-48-4-1(a), (e).

[2] I.C. § 35-48-4-6(a), (d).

[3] I.C. § 9-24-19-2.

[4] I.C. § 35-48-4-11(a).

Hitchcock") pulled over Green's vehicle for failure to stop at a stop sign. Before Green's car actually stopped, the officers could see him lean toward the center of the vehicle. Once the vehicle stopped and the officers approached it, they could smell through the closed windows an overwhelming odor of raw marijuana emanating from the vehicle.

[5] Green told Officer Hitchcock, who was at the driver's side window, that he did not have a driver's license and that he did not know where the vehicle registration document was. Officer Hitchcock checked Green's driving status through the data base in his police vehicle and learned that Green's driver's license had been suspended. Officer Hitchcock then informed Green that his license was suspended. As Green leaned toward the driver's side window toward Officer Hitchcock, Officer Milburn, who was standing by the passenger door, saw a handgun in a holster on the right side of Green's waist. Officer Milburn alerted Officer Hitchcock to the presence of the gun and ordered Green to keep his hands visible. The officers then ordered Green to stick his hands out of the driver's side window and they handcuffed him. They then instructed Green to step outside the vehicle, and they seized his gun. The officers then walked Green toward the back of the vehicle.

[6] As Green was standing at the back of the vehicle with Officer Milburn, the officer noticed Green lean his pelvic area against the car. Officer Milburn had seen suspects wearing loose clothing lean against vehicles before to stop contraband from falling out of their clothes, and he had also seen suspects using vehicles "as leverage to push off the car and either assault officers or run away."

Tr. at 25. Officer Milburn ordered Green to step away from the vehicle and then conducted a pat-down search of Green's person. During the pat-down, Officer Milburn could feel a "good size" rock-like substance inside a plastic bag inside Green's pants. *Id*. at 26. Officer Milburn believed the substance was contraband. At that point, Officers Milburn and Hitchcock asked Green what the rock-like substance was. Green responded, "I have dope on me." *Id*. at 81. Officer Hitchcock then read Green his *Miranda* rights.[5]

[7] The officers asked Green some additional questions about the rock-like substance, and Green informed them that it was heroin. Officer Milburn then informed Green that the officers "had to retrieve the narcotics," and they asked Green to do that for them, since the narcotics were "down inside [Green's] shorts." *Id*. at 28. Green agreed and pulled out two whitish-colored rocks that later testing proved to be heroin. Officer Milburn then began an inventory of Green's pockets and discovered two wads of money that were mostly bills of small denominations. Officer Milburn knew from his training and experience that small denominations indicate street transactions of narcotics. An inventory search of the vehicle disclosed a loaded shotgun in the trunk. Inside the car, there was a digital scale with a powdery substance on it and various bullets of different calibers. The officers also found in the vehicle a marijuana blunt with

---

[5] Officers Milburn and Hitchcock gave conflicting testimony regarding whether they questioned Green before or after reading him his *Miranda* warnings. Tr. at 28, 81. However, because Officer Hitchcock was the officer who read the warnings, the trial court credited and relied upon his testimony that the officers asked Green what the substance was and he responded "dope" before they read him his *Miranda* rights. Tr. at 113.

green vegetation sticking out of it, which later testing showed to be marijuana. There was also a burnt marijuana roach on the floorboard.

[8] The State charged Green with Count I, Level 2 felony dealing in a narcotic drug; Count II, Level 3 felony possession of a narcotic drug; Count III, Level 4 felony unlawful possession of a firearm by a serious violent felon; Count IV, Class A misdemeanor driving while suspended; and Count V, Class B misdemeanor possession of marijuana. Green waived his right to a jury trial, and his bench trial took place on November 13, 2017.

[9] At trial, Green objected to the introduction of the heroin, arguing that its discovery violated the federal and Indiana Constitutions. The State responded that the search was proper because Defendant was under arrest at the time and it was a search incident to arrest. The trial court overruled the objection and admitted the heroin into evidence. However, the trial court found that the police did not provide the *Miranda* warning until after Green had stated that he had "dope" on him; therefore, the trial court suppressed that statement. Tr. at 113-14.

[10] Green testified at trial that he was addicted to heroin and that, when the police stopped him, he had just obtained heroin. He said he had the scale so that he would not be cheated and that the reason he had so much heroin was so that it would last a while and he would not have to take the risk of buying more so often. Green described himself as someone who used heroin three or four times a day and testified that he snorted the heroin because he did not like needles.

He testified that the last day he used heroin was the day he was arrested and that he did not enter a rehabilitation program after that because he wanted to go "cold turkey."  Tr. at 176.

[11]  After both parties presented their evidence and closing arguments, the trial court stated:

> At the end of the day, the Court would just summarily state that it does not find Mr. Green's testimony to be credible.  I find it to be[,] frankly[,] very convenient.  Based on the other officers' testimony[,] the Court is aware based on dozens of police officer experts that a person can in fact snort heroin.  But that testimony today is very convenient.  In light of all of the other testimony by the officers and that the heroin rocks could be crushed as opposed to cut with a knife or what have you.  All of that though, frankly the testimony that Mr. Green gave that very much lends itself to the Court's finding of lack of credibility is his testimony that his last use was on the day of arrest and that he never went to rehab.  By his own testimony, in comparison to what Detective Vanoeveren stated[,] he would be a heavy, heavy – considered a very heavy user of heroin. This judicial officer[,] after twenty some years of being a lawyer and twelve to thirteen years of being a judicial officer, two years in this court and nine and a half years in family law court where I encountered numerous of [sic] folks who have used drugs[,] have yet to see a heroin user who has successfully become clean of heroin without going to rehabilitation.  That[,] the Court finds[,] is not a credible statement by Mr. Green.  And does not lend itself to someone that is a heavy – heavily addicted user of this drug.

Tr. at 190-91.

[12] The trial court found Green guilty as charged on Counts I, II, IV, and V, and it dismissed Count III. The trial court subsequently entered convictions on Counts I, IV, and V, and sentenced Green to ten years' incarceration, with five years suspended and two years of probation, on Count I, and sixty-three days concurrent on each of Counts IV and V. This appeal ensued.

# Discussion and Decision

## Admission of Heroin Into Evidence

[13] Green challenges the trial court's admission of the heroin into evidence, over his objection. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion, and whether

> the error affects a party's substantial rights. But when an appellant's challenge to such a ruling is predicated on an argument that impugns the constitutionality of the search or seizure of the evidence, it raises a question of law, and we consider that question de novo.

*Guilmette v. State*, 14 N.E.3d 38, 40-41 (Ind. 2014) (quotations and citations omitted). Moreover, "we may affirm a trial court's ruling on admissibility on any theory supported by the record, even if the State argued a different theory of admissibility at the trial court level." *Leitch v. State*, 736 N.E.2d 1284, 1286 (Ind. Ct. App. 2000) (citation omitted), *trans denied*.

[14] Green contends that the admission of the heroin into evidence violated both his Fourth Amendment rights under the United States Constitution, and his rights

under Article 1, Section 11 of the Indiana Constitution.  We address each constitutional claim in turn.

*Fourth Amendment*

The Fourth Amendment[6] prohibits warrantless searches and seizures unless the State can prove that an exception to the warrant requirement existed at the time of the search.  *See, e.g.*, *Edmond v. State*, 951 N.E.2d 585, 588 (Ind. Ct. App. 2011).  Police may, "without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion that criminal activity 'may be afoot.'"  *Id*. (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).  However, an arrest or a detention for more than a short period must be justified by probable cause.  *Id*. "Probable cause to arrest exists where the facts and circumstances within the knowledge of the officers are sufficient to warrant a belief by a person of reasonable caution that an offense has been committed and that the person to be arrested has committed it."  *Id*.  (citing *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)).  An arrest has occurred "when a police officer interrupts the freedom of the accused and restricts his liberty of movement."  *Fentress v. State*, 863 N.E.2d 420, 423 (Ind. Ct. App. 2007) (citation, quotation marks, and brackets omitted).  And a search incident to a lawful arrest is an exception to

---

[6] The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.

the warrant requirement under the Fourth Amendment. *State v. Parrott*, 69 N.E.3d 535, 542 (Ind. Ct. App. 2017) (citing and quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search...."), *trans. denied*.

[16] Here, Green admits that the police lawfully stopped him initially because they had reasonable suspicion that he had failed to stop at a stop sign. Green also admits that the police had probable cause to arrest him after they smelled raw marijuana coming from his car and/or they learned that he was driving with a suspended license. Green further admits that he was under arrest at the time Officer Milburn conducted the pat-down of Green.[7] And Green acknowledges that the police had the right to search him incident to that arrest.

[17] However, Green maintains—without citation to supporting authority—that Officer Milburn's pat-down was not done "incident to arrest" because the officers said they did the pat-down "for officer safety." Appellant's Br. at 13. First, the need for officer safety is one of the reasons for the rule allowing warrantless searches incident to arrest, *Parrott*, 69 N.E.3d at 542 n.3; therefore,

---

[7] Although there is no evidence that the police formally stated, "You are under arrest," Green admits there was probable cause for the arrest; and, even if he was not formally placed under arrest at the time of the search, that does not invalidate the search. *See, e.g.*, *Bell v. State*, 13 N.E.3d 543, 545 (Ind. Ct. App. 2014), *trans. denied*.

the officers' articulation of that reason does not affect the lawfulness of the search. Second, an action "'is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify [the] action.'" *J.K. v. State*, 8 N.E.3d 222, 235 (Ind. Ct. App. 2014) (quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006)). Because the officers had lawfully arrested Green, the search incident to that arrest, and the seizure of items found, were reasonable and required no further justification.[8] *Robinson*, 414 U.S. at 235.

*Article 1, Section 11 of the Indiana Constitution*

[18] Green also asserts that the pat-down search violated his rights under Article 1, Section 11 of the Indiana Constitution.[9]

> "While almost identical to the wording in the search and seizure clause of the federal constitution, Indiana's search and seizure clause is independently interpreted and applied." *Baniaga v. State*, 891 N.E.2d 615, 618 (Ind. Ct. App. 2008). Under the

---

[8] Green erroneously analyzes the pat-down under the "plain feel doctrine." Appellant's Br. at 16-19. However, that doctrine is only applicable to searches done during "*Terry* stops," i.e., stopping an individual when there is reasonable suspicion that criminal activity is afoot, but no probable cause to arrest. *E.g.*, *Burkett v. State*, 785 N.E.2d 276, 278 (Ind. Ct. App. 2003). Here, the search was done incident to a lawful arrest.

Green also erroneously maintains, again without citation to supporting authority, that the officers' request that he retrieve the heroin from his pants himself—rather than the officers retrieving it from him—made the search a search pursuant to consent that would require the advisement of the right to counsel prior to the search, pursuant to *Pirtle v. State*, 323 N.E.2d 634 (1975). We disagree. The police never asked Green for his consent to search his person, and Green never gave such consent. Rather, the search was clearly conducted incident to the valid arrest.

[9] Article 1, Section 11 states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." Ind. CONST. Art. 1, § 11.

Indiana Constitution, the legality of a governmental search turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). Although other relevant considerations under the circumstances may exist, our Supreme Court has determined that the reasonableness of a search or seizure turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizens' ordinary activities, and 3) the extent of law enforcement needs. *Baniaga*, 891 N.E.2d at 618. The burden is on the State to show that under the totality of the circumstances, the intrusion was reasonable. *Id*.

*Hathaway v. State*, 906 N.E.2d 941, 945 (Ind. Ct. App. 2009), *trans. denied*.

[19] Here, the degree of suspicion weighs in favor of the State. As our Supreme Court noted in *Garcia v. State*, where a defendant was lawfully placed under arrest for driving without a valid driver's license, a pat-down of his person incident to arrest was permissible without the need for additional suspicion. 47 N.E.3d 1196, 1200-01 (Ind. 2016). The degree of intrusion also weighs in the State's favor. "Although the search of a person's body is a substantial intrusion, a police officer is authorized to conduct a thorough search of an arrestee." *Edmond*, 951 N.E.2d at 592. Thus, where the police carry out "only a pat-down search of [an arrestee's] clothing … the degree of intrusion [is] minimal…." *Id*. And "a search incident to arrest serves important purposes, such as ensuring that the arrestee is unarmed, preventing the arrestee from bringing contraband into jail, and preventing the destruction of evidence." *Id*. Therefore, law enforcement needs also weigh in favor of the State. *Id*. Officer Milburn's pat-

down search and resulting seizure of the heroin did not violate Green's rights under Article 1, Section 11 of the Indiana Constitution.

## Trial Court's Statements Regarding Green's Credibility

[20]    Green maintains that the trial court was not fair and impartial—and therefore denied him a fair trial—because it relied on facts not in evidence.[10]  Specifically, Green contends that the judge showed bias by relying on her own experience as a judge and a lawyer to determine whether Green's statement that he quit using heroin without going to rehabilitation was credible.[11]

[21]    We start with a presumption that a judge is unbiased and unprejudiced.  *Woods v. State*, 98 N.E.3d 656, 664 (Ind. Ct. App. 2018) (citing *Timberlake v. State*, 753 N.E.2d 591, 610 (Ind. 2001)).

> Judges require broad latitude to run their courtrooms and to maintain discipline and control.  *Brown v. State*, 746 N.E.2d 63, 70–71 (Ind. 2001).  A defendant asserting judicial bias must show that the trial judge's actions and demeanor showed partiality and prejudiced the case.  *Id*. at 71.

---

[10]  Green also asserts, without analysis, that the trial court "effectively testified in the trial" in violation of Indiana Rule of Evidence 605.  Appellant's Br. at 22.  He waived that argument by failing to support it with cogent reasoning.  Ind. Appellate Rule 46(A)(8).  Waiver notwithstanding, the trial judge's comment that, based on her experience, she believed Green was not credible was merely "fair comment" on evidence already adduced at trial, i.e., testimony that Green was a heavy heroin user yet claimed not to need rehabilitation to stop using heroin.  *See Ferguson v. State*, 40 N.E.3d 954, 957-58 (Ind. Ct. App. 2015), *trans. denied*.

[11]  Whether Green's statement was credible was relevant to whether Green was merely a heroin user in possession of heroin, as he claimed, rather than a dealer of heroin, as charged in Count I.

*Id*. And a judge's intemperate comments may not necessarily demonstrate bias.

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Id*. (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

[22] Moreover, when making its determinations, a trier of fact (whether judge or jury) may rely on its "common sense and knowledge acquired through everyday experiences—indeed, that is precisely what is expected of [it]." *Clemons v. State*, 83 N.E.3d 104, 108 (Ind. Ct. App. 2017) (citing *Halsema v. State*, 823 N.E.2d 668, 673-74 (Ind. 2005)), *trans. denied*. As our Supreme Court has noted,

> Obviously, no juror can or should approach deliberations with an entirely clean cognitive slate. Humans can make intelligent decisions only by drawing upon their accumulated background knowledge and experience. Jurors are not only permitted to make decisions in this manner, it is expected of them[.]

*Staton v. State*, 853 N.E.2d 470, 475-76 (Ind. 2006) (quoting 27 Charles A. Wright & Victor J. Gold, Federal Practice & Procedure § 6075, at 450 (2d ed. 1990)). That observation applies equally to trial judges making deliberations in a bench trial.

[23] Here, the trial judge cited testimony relating to Green's heavy use of heroin and compared that to Green's contention that he did not go to rehabilitation to help him quit using heroin. The judge then applied her years of legal experience with heroin users to come to the common sense conclusion that a heavy heroin user usually requires rehabilitation in order to quit using heroin and that Green's testimony to the contrary was not credible. This was a permissible and reasonable inference based on the evidence and common sense. Green has failed to show that the judge's challenged remarks "display[ed] a deep-seated … antagonism that would make fair judgment impossible." *Woods*, 98 N.E.3d at 664.

# Conclusion

[24] The admission of the heroin into evidence did not violate Green's Fourth Amendment or state constitutional rights, as it was seized pursuant to a lawful search incident to arrest. And Green has failed to carry his burden of showing the trial judge denied him a fair trial due to bias.

[25] Affirmed.

Mathias, J., and Bradford, J., concur.