## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 15 2019, 10:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Burkhart,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 15, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2295<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Steven Rubick, Magistrate<br><br>Trial Court Cause No.<br>49G01-1804-F5-13128 |

**Pyle, Judge.**

## Statement of the Case

Michael Burkhart ("Burkhart") appeals his conviction of Level 5 felony stalking.[1] He specifically argues that the trial court abused its discretion in admitting evidence and in refusing to give the jury his tendered instruction. Concluding the trial court did not abuse its discretion, we affirm Burkhart's convictions.

We affirm.

## Issues

1. Whether the trial court abused its discretion in admitting evidence.

2. Whether the trial court abused its discretion in refusing to give Burkhart's tendered jury instruction.

## Facts

The evidence most favorable to the verdict reveals that in 1993, Burkhart's mother contacted the Roman Catholic Archdiocese of Indianapolis ("the Archdiocese") to report that her then-twenty-two-year-old son had been molested by a priest when he was a teenager. Burkhart had apparently hired an attorney regarding a potential civil claim against the Archdiocese. The Archdiocese found Burkhart's molestation claim to be credible but advised him

---

[1] IND. CODE § 35-45-10-5. A jury also convicted Burkhart of Class A misdemeanor resisting law enforcement. *See* I.C. § 35-44.1-3-1. Burkhart does not appeal that conviction.

that his civil claim was barred by the statute of limitations. The Archdiocese offered Burkhart "what the [Archdiocese] normally offer[s] a victim, and that was [its] pastoral outreach, which is to provide counseling, counseling assistance, [and] medical assistance to help with any trauma that [Burkhart] may have suffered." (Tr. Vol. 2 at 26).

[4] Fourteen years later, in May 2007, Burkhart sent a letter to the Archdiocese's attorney, John Mercer ("Mercer"). In the letter, Burkhart, who was living in Pennsylvania at the time, asked the Archdiocese to provide him with: (1) $275,000 for a house: (2) $40,000 for furnishings; (3) $35,000 for a car; (4) $40,000 after taxes annually for life; (5) therapy for life and medications; (6) payment of all mental health bills; (7) payment for back S.S.I.; and (8) payment of 40% of attorney fees, plus any additional costs incurred for travel, lodging, meals, and rental cars. Burkhart told Mercer that he was attempting to "resolve [the] case short of filing a lawsuit[.]" (Ex. 3). Mercer responded that he had explained to Burkhart in 1993 that any legal claim was barred by the statute of limitations. Mercer explained that the Archdiocese would "continue to offer the pastoral response to [] Burkhart." (Ex. 4).

[5] In January 2008, Burkhart sent another letter to Mercer stating that he was "so tired of empty promises from [Mercer] and the Church." (Ex. 5). Burkhart further explained his circumstances as follows: "I really don't know what I am going to do or where I am going to live once I get out of treatment. I have nothing and no one to count on or anyone to turn to." (Ex. 5). Burkhart ended his letter by stating that he was "giving [Mercer] and the Archdiocese one week

to show [him] how sincere [they] were when [they] said that [they] wanted to support [him] in every way possible." (Ex. 5). Mercer responded that the Archdiocese intended "to continue to reach out to [Burkhart] with its pastoral response" but was "not in a position to provide [him] with the financial assistance [he was] seeking." (Ex. 6).

[6] Six years later, in September 2014, Burkhart began making harassing telephone calls to Mercer. Burkhart demanded compensation for being molested and threatened to become violent if his demands were not met. In August 2017, Burkhart contacted Carla Hill ("Hill"), the victim's assistance coordinator for the Archdiocese. Hill was responsible for assisting sexual abuse victims in scheduling counseling appointments. Burkhart asked Hill to schedule him an appointment with a specific psychiatrist. When Hill explained that that specific psychiatrist "was not an option for him," Burkhart threatened to catch a Greyhound bus to Indianapolis and kill Mercer. (Tr. Vol. 2 at 84).

[7] One month later, in September 2017, Mercer recorded one of Burkhart's calls ("the September 2017 Telephone Call"). During the call, Burkhart told Mercer that he was going to kill Mercer and "eat [Mercer's] guts." (Tr. Vol. 2 at 40). Burkhart also threatened Mercer's wife and children. The State charged Burkhart with two counts of Level 6 felony intimidation ("the 2017 Intimidation Case"). Burkhart pled guilty to one of the counts, and the State dropped the other one. The trial court sentenced him to one year in the county jail.

[8]     In early 2018, the trial court granted Mercer and Archdiocese employees, including Cathy Meyer ("Meyer"), an executive assistant at the Archdiocese who works with Hill to assist sexual abuse victims, a protective order against Burkhart ("the 2018 Protective Order"). The trial court specifically ordered Burkhart to stay away from the Archdiocese and to cease communication with Mercer and other Archdiocese employees, including Meyer. The only Archdiocese employee that Burkhart was allowed to contact was Hill to schedule counseling appointments.

[9]     In April 2018, while he was in Indianapolis, Burkhart contacted Meyer and told her that he wanted to speak with Hill. Meyer responded that she would let Hill know that he had called. Meyer immediately contacted Hill and told her about the call. However, shortly thereafter, Meyer received another call from Burkhart, who was angry that he had not heard back from Hill. Burkhart threatened to kill Meyer.

[10]    That same month, Burkhart contacted Hill and told her that he needed prescriptions for Xanax and Adderall. Burkhart, who was staying in a motel in Indianapolis, also demanded that Hill pay his two-night bill. Burkhart further told Hill that if she did not pay the bill, he would kill someone. Hill believed that Burkhart was referring to killing Mercer. Hill asked Burkhart the address of the motel where he was staying. After getting the address, Hill contacted Mercer, who directed her to two Indianapolis Metropolitan Police Department officers. The officers went to the motel to confront Burkhart about violating the 2018 Protective Order. Burkhart became "irrational, very irate, screaming,

[and] yelling." (Tr. Vol. 2 at 110). When the officers attempted to lead Burkhart out of the motel room, Burkhart began kicking the officers.

[11]  The State charged Burkhart with the Level 5 felony stalking of Mercer, and/or Hill, and/or Meyer. The information specifically alleged that Burkhart had threatened Mercer, Hill, and Meyer with the intent to place them in reasonable fear of serious bodily injury or death by engaging in a course of conduct that included the following relevant conduct: (1) making the 2017 Telephone Call; (2) engaging in conduct that led to the issuance of a the 2018 Protective Order; (3) threatening Meyer in April 2018; and (4) threatening Hill in 2018. The State also charged Burkhart with Level 6 felony intimidation of Meyer; Level 6 felony intimidation of Hill; Class A misdemeanor resisting law enforcement; Class B misdemeanor disorderly conduct; and Class A misdemeanor invasion of privacy.

[12]  At trial, Burkhart objected to the admission into evidence of the recording of the September 2017 Telephone Call. He specifically argued that there were "403 issues of any probative value being outweighed by the risk of prejudice." (Tr. Vol. 2 at 39). In addition, the State offered and the trial court admitted into evidence without objection the charging information, the plea agreement, and the sentencing order in the 2017 Intimidation Case.

[13]  Also at trial, Burkhart asked the trial court to give the jury Indiana Pattern Instruction Number 13.3300, Unanimous Decision on Generic Evidence of Multiple Acts, which provides as follows:

The Defendant is accused in this case of having committed the crime of [*name alleged crime*] against [*name victim*] during [*state alleged time period*].

The State has presented evidence that the Defendant may have committed more than one act of [*name alleged crime*] against [*victim*] during [*date*]. The evidence described multiple acts that may constitute the crime of [*name alleged crime*]. Before you may find the Defendant guilty of the crime of [*name alleged crime*] in the case:

(1) You must all unanimously find and agree that the State proved beyond a reasonable doubt that the Defendant committed all acts of [*name alleged crime*] against [*name victim*] described in the evidence during [*specify time period alleged*].

Or

(2) You must all unanimously find and agree that the State proved beyond a reasonable doubt that the Defendant committed the act of [*name alleged crime*] against [*name victim*] in [*specify first time alleged in the charge*].

Or

(3) You must all unanimously find and agree that the State proved beyond a reasonable doubt that the Defendant committed the act of [*name alleged crime*] against [*name victim*] in [*specify second time alleged in the charge*].

If you find the Defendant guilty, your verdict does not have to specify the particular act of [*name alleged crime*] Defendant committed or the time it was committed.[2]

---

[2] The State correctly points out that:

> Burkhart did not tender a written jury instruction on this issue; however, Burkhart's counsel indicated that she was going to electronically file and email a copy, but the trial court said, 'It

[14]     Burkhart explained that the purpose of the instruction was to "remind[] the jury that the stalking statute says this date through this date and they are only to consider the evidence from this date to this date for the stalking charge[.]" (Tr. Vol. 2 at 140). He further explained that the pattern instruction would need to be modified so that it applied to the offense of stalking. The State agreed that the instruction needed to be modified because the instruction did not "fit the crime of stalking." (Tr. Vol. 2 at 142). The State explained that it was attempting to "fashion a way that it [did]." (Tr. Vol. 2 at 142). The State further explained that Burkhart "want[ed] to be limited to the dates we're talking about, and I get that, but I don't know how to do that with this instruction and I don't think this instruction fits what he's charged with here." (Tr. Vo. 2 at 142). Thereafter, the trial court determined that since "we don't have pattern language that is on point[,] the request to add a modified pattern . . . is denied." (Tr. Vol. 2 at 142). The trial court further explained that Burkhart would have the opportunity to read from the pattern as part of his argument that the jury could only consider the evidence from specific dates alleged by the State for the stalking charges. During closing argument, Burkhart pointed out that the crimes with which he had been charged had allegedly been committed between September 2017 and April 2018. A jury convicted Burkhart of five of

---

might be easier if you just tell us the pattern number.' (Tr. Vol. 2 at 140). Later the trial court stated, 'Okay. Well, we'll print out a copy of that and I'll allow [the deputy prosecutor] to look over his version.' (Tr. Vol. 2 at 141)." (Appellee's Br. at 20).

the six charges, and the trial court merged several of the convictions. Burkhart now appeals his convictions of stalking.

# Decision

## 1. Admission of Evidence

[15] Burkhart first argues that the trial court abused its discretion in admitting the recording of the 2017 Telephone Call into evidence because it was more prejudicial than probative and, therefore, violated Evidence Rule 403.[3] Pursuant to Indiana Rule of Evidence 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *Snow v. State*, 77 N.E.3d 173, 179 (Ind. 2017). This balancing is committed to the trial court's discretion. *Id.*

[16] We also review the trial court's decision on the admissibility of evidence for an abuse of discretion. *Hape v. State*, 903 N.E.2d 977, 991 (Ind. Ct. App. 2009), *trans. denied*. We will reverse a trial court's decision only if it is clearly against

---

[3] In addition, Burkhart argues that the trial court erred in admitting his 2017 intimidation conviction into evidence. However, Burkhart failed to object to the admission of this evidence at trial. In order to preserve an issue for appeal, a contemporaneous objection must be made when the evidence is introduced at trial. *Palilonis v. State*, 970 N.E.2d 713, 730 (Ind. Ct. App. 2012), *trans. denied*. If no such objection is made, the issue is waived for appellate review. *Id.* The fundamental error doctrine is an exception to the general rule that the failure to object at trial constitutes a procedural default precluding consideration of the issue on appeal. *Id.* In order to be fundamental, the error must represent a "blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process." *Hoglund v. State*, 962 N.E.2d 1230, 1239 (Ind. 2012). "Harm is not shown by the fact that the defendant was ultimately convicted; rather harm is found when error is so prejudicial as to make a fair trial impossible." *Id.* Further, this exception is available only in egregious circumstances. *Palilonis*, 970 N.E.2d at 730. Here, Burkhart has failed to allege or show how the admission of this evidence made a fair trial impossible or why the circumstances in this case were egregious. He has therefore failed to show fundamental error.

the logic and effect of the facts and circumstances of the case. *Id.* However, the erroneous admission of evidence is to be disregarded as harmless if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction. *Hoglund*, 962 N.E.2d at 1238.

[17] To convict Burkhart of stalking, the State was required to prove that he (1) knowingly or intentionally, (2) engaged in a course of conduct involving repeated or continuing harassment of the victims, (3) that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened, and (4) that actually caused the victims to feel terrorized, frightened, intimidated, or threatened. *Nicholson v. State*, 963 N.E.2d 1096, 1101 (Ind. 2012). Repeated in this context means more than once. *See id.* (holding repeated meant more than once).

[18] Here, our review of the transcript reveals substantial evidence apart from the September 2017 Telephone Call to support Burkhart's stalking conviction. Specifically, the evidence reveals that in early April 2018, the trial court issued a protective order that, based on Burkhart's prior threats, ordered Burkhart to cease any communication with Mercer and Meyer. Later that month, Burkhart threatened to kill Meyer and someone else at the Archdiocese. This overwhelming evidence, all of which was admitted without objection, leads us to conclude that there is no substantial likelihood that the challenged evidence

contributed to Burkhart's conviction.  Any error in the admission of this evidence was therefore harmless. [4]

## 2.    Jury Instruction

[19]    Burkhart also argues that the trial court erred in refusing to give his tendered jury instruction.  A defendant is entitled to have the jury instructed correctly on an essential rule of law.  *McCarthy v. State*, 751 N.E.2d 753, 755 (Ind. Ct. App. 2001), *trans. denied*.  The giving of jury instructions is a matter within the sound discretion of the trial court, and we review the trial court's refusal to give a tendered instruction for an abuse of discretion.  *Id.*  Generally, we will reverse a trial court for failure to give a tendered instruction if:  (1) the instruction is a correct statement of the law; (2) it is supported by the evidence; (3) it does not repeat material adequately covered by other instructions; and (4) the substantial rights of the tendering party would be prejudiced by a failure to give it.  *Id.*

[20]    Here, our review of the testimony regarding Burkhart's tendered instruction reveals that Burkhart tendered Pattern Jury Instruction 13.3300 because he wanted to remind the jury that they were only to consider evidence between two specific dates set forth in the charging information.  However, both Burkhart and the State agreed that the crime of stalking did not fit the

---

[4] Burkhart also argues that the 2017 Telephone Call violated double jeopardy principles because the it was used to convict him of both intimidation and stalking.  However, Burkhart has waived appellate review of this issue because he did not present this evidence to the trial court.  *See Ferguson v. State*, 40 N.E.3d 954 (Ind. Ct. App. 2015), *trans. denied*.  We further note that Burkhart has again failed to allege or show how the admission of this evidence made a fair trial impossible or why the circumstances in this case were egregious.  In addition, waiver notwithstanding, we have already determined that any error in the admission of this evidence was harmless.

instruction and that the instruction would need to be modified. In light of the required modification, the trial court refused to give the jury the instruction. However, the trial court further explained that it would allow Burkhart to advise the jury that it could only consider evidence from specific dates set forth in the charging information for the stalking charges. During closing argument, Burkhart pointed out to the jury that the crimes with which he had been charged had allegedly been committed between September 2017 and April 2018. Based on these facts and circumstances, Burkhart's substantial rights were not prejudiced by the trial court's refusal to give his tendered instruction. We therefore find no abuse of the trial court's discretion.

Affirmed.

Riley, J., and Bailey, J., concur.