## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 17 2020, 8:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David R. Hennessy
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief, Criminal Appeals
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Justin Jones,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 17, 2020<br><br>Court of Appeals Case No.<br>20A-CR-512<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Grant W. Hawkins, Judge<br><br>Trial Court Cause No.<br>49G05-1802-F2-5853 |

**Najam, Judge.**

## Statement of the Case

Justin Jones appeals the trial court's denial of his motions to suppress evidence obtained following a warrantless search of a cell phone and a subsequent search of that same cell phone pursuant to a search warrant. Jones raises two issues for our review, which we consolidate and restate as follows: whether the trial court erred when it denied his motions to suppress.

We affirm.

## Facts and Procedural History

On June 3, 2017, Sarah Thompson was at home with her two small children. At some point that night, two white males, one masked and one unmasked, kicked in the door to her home. The men "tied [Thompson] up" and "assaulted her" while they passed a handgun "back and forth." Appellant's App. Vol. 2 at 37. The men held Thompson and her children for several hours while they searched the house. Ultimately, the men stole jewelry, shoes, purses, gaming consoles, and a vehicle. Officers with the Indianapolis Metropolitan Police Department ("IMPD") responded to Thompson's house at 1:52 a.m. on June 4.

Later that morning, IMPD officers responded to a report that shots had been fired at a different location, and they discovered the stolen vehicle. An individual then told officers that she had heard gun shots and had seen two white males run from the truck and get into another vehicle. Officers found a Samsung cell phone located "next to" the truck "in the direction the suspects

fled." *Id*. at 38. Officers also found an LG flip phone in the vehicle. Officers collected the phones and transported them to the IMPD property room.

[5] On June 15, IMPD Detective James Hurt went to the property room to look at the phones recovered from in and around the stolen vehicle. On the Samsung phone, which was not password protected, Detective Hurt saw a picture of Thompson and her injuries from the offense on the home screen. Detective Hurt then contacted Thompson and asked her about the picture. Thompson informed Detective Hurt that she had sent that picture to Jones. Detective Hurt also learned that the LG flip phone belonged to either Thompson or her boyfriend.

[6] On June 23, officers sought a warrant to search the Samsung phone. In support of that request, Detective Hurt filed an affidavit in which he outlined the offense that had occurred on June 4. He further indicated that officers had responded to a call of shots fired and found the phone next to the stolen vehicle. Detective Hurt did not include any information regarding the picture of Thompson he had found on the phone's home screen. He then indicated that he was looking for data that "is indicia of ownership," or that would constitute "fruits, instrumentalities, and/or evidence of the crime" of robbery. Ex. at 13 (emphasis removed). The trial court found that probable cause existed and issued a warrant that authorized officers to search the phone for "[a]ll as described and detailed in the page(s) titled: 'List of Property, Objects, Things, Information, or Persons to be Seized or Produced.'" *Id*. at 18 (emphasis removed).

[7]     IMPD Detective Grant Melton searched the phone and found messages and photographs connecting the phone to Jones, including the picture that Thompson had sent to Jones of her in the hospital. *See* Appellant's App. Vol. 2 at 40. Detective Melton also analyzed the phone's location information and determined that Jones' cell phone had been in the "same neighborhood" as Thompson's house on June 4. *Id.* at 41. The State then charged Jones with burglary, as a Level 2 felony; robbery, as a Level 3 felony; criminal confinement, as a Level 3 felony; kidnapping, as a Level 3 felony; kidnapping, as a Level 5 felony; and auto theft, as a Level 6 felony.

[8]     Jones filed a motion to suppress the results of Detective Melton's search of his cell phone. In that motion, Jones raised numerous issues and asserted that the search of the cell phone violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The State responded and asserted that Jones had abandoned his phone and, thus, that he lacked standing to challenge the searches. On April 18, 2019, the trial court held a hearing on Jones' motion. At that hearing, Detective Hurt testified that, when he looked at the phone on June 15, he did not know that the phone was "associated with" Jones. Tr. at 48. He further testified that the photo of Thompson "popped up" on the home screen and that he "didn't push a button" on the phone. *Id.* at 52.

[9]     Jones then filed a motion to suppress the results of the initial search of the cell phone. Jones asserted that Detective Hurt's actions amounted to a search of the phone, which Detective Hurt had conducted without a warrant. The State

responded and again claimed that Jones lacked standing because he had abandoned the phone. The trial court held a hearing on Jones' motion to suppress the warrantless search. At the beginning of the hearing, the court "presume[d]" that Jones had standing. *Id*. at 65. During the hearing, Detective Hurt testified that, when he picked up the phone on June 15, he simply saw "a picture of the victim in the hospital" and "[n]othing else." *Id*. at 75. But he testified that, "no matter what" had happened on June 15, he was going to get a search warrant for the phone because officers had found it next to a stolen vehicle. *Id*. at 74. At a subsequent hearing, the court stated that the search warrant was "adequate" and orally denied Jones' motion to suppress evidence that Detective Melton had found on the phone. *Id*. at 166.

[10] Jones then filed a motion to reconsider. Following a hearing, the court entered an order in which it indicated that it had "re-examined the record before it by going back to the beginning of the argument and moving through the sub-issues." Appellant's App. Vol. 2 at 31. The court then stated that, "[u]pon reflection," the phone had been abandoned and, thus, that Jones did not have standing to challenge the searches of the phone. *Id*. Accordingly, the trial court denied Jones' motions to suppress.

[11] Thereafter, Jones filed a motion to certify the court's order for interlocutory appeal in which Jones raised a number of questions, including whether the State had established that the phone was abandoned, whether Detective Hurt's actions on June 15 amounted to a search, and whether the second search of the phone was proper. *See* Appellant's App. Vol. 4 at 102-04. The court granted

Jones' motion and ordered "that the Court's findings and orders regarding standing and abandonment are hereby certified for interlocutory appeal," which we accepted. *Id*. at 165. This interlocutory appeal ensued.

# Discussion and Decision

## *Standard of Review*

Jones appeals the trial court's denial of his motions to suppress. As our Supreme Court has explained:

> Trial courts enjoy broad discretion in decisions to admit or exclude evidence. When a trial court denies a motion to suppress evidence, we necessarily review that decision deferentially, construing conflicting evidence in the light most favorable to the ruling. However, we consider any substantial and uncontested evidence favorable to the defendant. . . . If the trial court's decision denying a defendant's motion to suppress concerns the constitutionality of a search or seizure, then it presents a legal question that we review *de novo*.

*Marshall v. State*, 117 N.E.3d 1254, 1258 (Ind. 2019) (cleaned up).

Jones specifically contends that the court erred when it denied his motions to suppress because the searches of his phone violated his rights under the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution. As this Court has recently stated:

> Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution provide that the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures.

These protections against unreasonable governmental searches and seizures are a principal mode of discouraging lawless police conduct.

*Harrison v. State*, 32 N.E.3d 240, 250 (Ind. Ct. App. 2015) (cleaned up).

### *Abandonment*

On appeal, Jones first asserts that the court erred when it denied his motions to suppress based on its conclusion that he had abandoned the phone and, thus, that he lacked standing to challenge the searches. It has long been held that abandoned property is not subject to protection under either the Fourth Amendment or Article 1, Section 11 of the Indiana Constitution. *See id.* As such, a person cannot abandon property and later claim that he had a protectable interest in that property. *See id.* Whether property has been abandoned is a question of intent, which can be ascertained from words, acts, or other objective facts. *See State v. Belcher*, 725 N.E.2d 92, 95 (Ind. Ct. App. 2000).

Here, Jones contends that the State failed to produce any evidence to demonstrate an intent by Jones "to relinquish any privacy interest" in the phone. Appellant's Br. at 21. Instead, he asserts that the "very nature" of the evidence in this case demonstrates "an accidental loss or theft." *Id.* at 20. However, we need not decide whether Jones had abandoned the phone. Even if we assume for the sake of argument that Jones had not abandoned the phone, as we explain below, Jones has not met his burden on appeal to demonstrate

that the court committed reversible error when it denied his motions to suppress.

### *Constitutionality of Searches*

[16] Jones next contends that the searches of his phone violated his constitutional rights. The State responds and asserts that this question is not properly before us because the only order the trial court certified for interlocutory appeal was its order concluding that Jones had abandoned the phone and, thus, that he lacked standing to challenge the searches. We cannot agree. As the State correctly points out, it is the trial court's order, not the particular legal issue or question, that is certified for appellate review. *See State v. Keller*, 845 N.E.2d 154, 160 (Ind. Ct. App. 2006). And, here, the order that the court certified for interlocutory appeal was an order on Jones' motion to reconsider. That order necessarily incorporated and implicated its prior order denying the motion to suppress the evidence from the warrantless search and its prior finding that the search warrant was adequate, which orders the court entered after the parties had thoroughly briefed and argued those issues. As such, this question is properly before us, and we will consider Jones' arguments regarding the constitutionality of the searches.

[17] On appeal, the State relies entirely on its assertion that Jones had abandoned the phone and, thus, that he lacked standing to challenge the searches. However, while Jones vigorously argues that both searches violated his rights under the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution, the State does not address those issues in its brief. "Where an

appellee's brief fails to address an issue raised by an appellant in the opening brief, it is the same, as to that issue, as though the appellee filed no brief." *Ferguson v. State*, 40 N.E.3d 954, 957 (Ind. Ct. App. 2015). And when an appellee fails to file a brief on appeal, we may, in our discretion, reverse the trial court's decision if the appellant makes a *prima facie* showing of reversible error. *McGill v. McGill*, 801 N.E.2d 1249, 1251 (Ind. Ct. App. 2004).

[18]　We initially address Jones' contentions regarding the search of his phone pursuant to the search warrant. On this question, Jones raises a number of issues. In particular, Jones asserts that the search of his phone pursuant to the warrant violated his federal and state constitutional rights because the affidavit in support of the search warrant: contained only uncorroborated hearsay, contained stale information, and failed to establish a nexus between the phone and a crime. He also contends that the search violated his rights because the warrant failed to identify the specific item or items to be searched. In sum, Jones contends that the warrant lacked probable cause.

[19]　However, we need not address his specific contentions regarding the inadequacy of the search warrant. The lack of probable cause does not necessarily require the suppression of evidence obtained during a search conducted pursuant to a warrant. *Snow v. State*, 137 N.E.3d 965, 969 (Ind. Ct. App. 2019). "Indeed 'the exclusionary rule does not require the suppression of evidence in reliance on a defective search warrant if the police relied on the warrant in objective good faith.'" *Id.* (quoting *Jackson v. State*, 908 N.E.2d 1140, 1143 (Ind. 2009)). The good faith exception has been codified at Indiana Code

Section 35-37-4-5(a) (2020), which provides that "the court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the evidence was obtained by a law enforcement officer in good faith." Accordingly, to establish reversible error, Jones must demonstrate *both* the lack of probable cause *and* the inapplicability of the good faith exception. *Id*. But Jones does not contend on appeal that the good faith exception does not apply.

[20] There are two circumstances where the good faith exception does not apply. *Id*. Those include situations where the magistrate is misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth or situations where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Id*. at 969-70.

[21] Jones has not addressed the good faith exception on appeal, and he has not directed us to any evidence in the record, or made any argument, that the magistrate was misled by information in the affidavit that Detective Hurt knew or should have known was false. *See* Ind. Appellate Rule 46(A)(8)(a). Neither does he assert that the warrant was so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable. *See id*. Accordingly, Jones has failed to meet his burden on appeal to demonstrate that the trial court erred when it denied his motion to suppress the evidence obtained following the search conducted pursuant to the warrant.

[22] Jones also contends that the warrantless search of his phone violated his constitutional rights. However, the only evidence officers obtained pursuant to that search was a photograph of the victim in the hospital. Indeed, Detective Hurt testified that, when he looked at the phone on June 15, he saw the picture of Thompson in the hospital and "[n]othing else." Tr. at 75. But Detective Melton discovered the same photograph when he searched the phone pursuant to the search warrant. *See* Appellant's App. Vol. 2 at 40. In other words, even if we were to suppress the photograph found following the warrantless search, that evidence is still admissible as a result of the search pursuant to the warrant.

[23] In addition, Jones contends that, when Detective Hurt saw the home screen of the Samsung phone, he searched the phone without a warrant. Jones further asserts it was the photograph of Thompson on the phone that caused Detective Hurt to seek a warrant. But Detective Hurt testified that he was going to obtain a warrant to search the phone "no matter what" because officers had found the phone in close proximity to a stolen vehicle. Tr. at 74. In his affidavit, Detective Hurt described the offense that had occurred at Thompson's home, including the fact that the suspects had stolen a vehicle, and stated that officers had found the phone "next to" to that vehicle. *See* Ex. at 7-8. Thus, there is a direct connection between the phone and the vehicle and a "substantial basis" for a finding of probable cause. *See Query v. State*, 745 N.E.2d 769, 771 (Ind. 2001). And Detective Hurt did not mention the photograph in the probable cause affidavit. As such, we cannot say that Detective Hurt's request for the search warrant was based on the home-screen photograph, that the court relied

on the photograph when it issued the search warrant, or that the warrant was tainted by an warrantless search.

[24] Because Detective Melton found the same photograph of Thompson during the search pursuant to the warrant and because neither Detective Hurt nor the court relied on the photograph in support of the warrant, Jones has not demonstrated that the court committed reversible error when it denied his motion to suppress the photograph pursuant to the warrantless search.

[25] In sum, we affirm the trial court's order denying Jones' motions to suppress.

[26] Affirmed.

Bradford, C.J., and Mathias, J., concur.